*1136 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos Innovation Towers Inc., en adelante el recurrente, solicitando la revisión de una resolución emitida el 18 de agosto de 2006 y archivada en autos la copia de la notificación el 25 de agosto de 2006 por la Administración de Reglamentos y Permisos, en adelante ARPE. Mediante la misma, la agencia recurrida revocó el Permiso de Construcción Número: 01CX2-00000-3016, expedido por ARPE a favor del recurrente. Este permiso autorizaba al recurrente a construir una torre para la co-ubicación de antenas de telecomunicación inalámbrica en el Municipio de Cidra. Así también el 10 de octubre de 2006 solicita la revisión de una resolución emitida por la Administración de Reglamentos y Permisos, en el mismo caso, en la que declaró no ha lugar una reconsideración.
Por tratarse del mismo asunto, se ordena la consolidación del KLRA-2006-00880 con el KLRA-2006-00978, conforme a la resolución del 22 de diciembre de 2006.
I
El 12 de julio de 2001, ARPE expidió un permiso al recurrente mediante el cual autorizó la construcción de una torre de telecomunicación inalámbrica en el Municipio de Cidra.
*1137 El 18 de septiembre de 2001, la Sra. Juana García, en adelante la recurrida, en cooperación con otros vecinos del área, presentaron en la Oficina Regional de ARPE en Guayama, una querella solicitando la revocación del permiso expedido. Según surge de la querella presentada, solicitaban la revocación del permiso por las siguientes razones: 

“1) El área en donde se construye esta antena no es en el Barrio Bayamón y sí en el Barrio Ceiba de Cidra.

2) En el documento ambiental se señala que esto es una cantera y esta información es incorrecta.

3) El documento ambiental señala que no existen residencias a 1000 metros y esto es falso.

4) Señalan en el documento ambiental que dentro de la finca no hay manantiales, quebradas y bosques. Existe en este lugar la quebrada y manantial El Suspiro.

5) Existen otras quebradas y bosques en fincas adyacentes en donde habita la Paloma Sabanera.

6) Es colindante con el camino de la Resbalosa y la sucesión Luis Rivera y no con la propietaria de la finca en todos los patios como señalan en el documento. Si la torre mide más de 50 metros al añadirle 25 metros de zona de amortiguamiento, era necesario consultar este colindante.

7) La serie de Suelos en donde se encuentra ésta es la serie de suelos Naranjito F, que es altamente erodable y es material arcilloso no arenoso como se indica en el documento, por lo tanto debieron consultar al Departamento de Agricultura Federal (Natural Resources Conservation Service).

8) Esta zona se encuentra comprendida dentro de la cuenca Hidrográfica del Río La Plata y el Programa Environmetal Quality Incentive Program (EQUIP) del Natural Resources Conservation Service USDA.

9) Tenían que celebrar vistas públicas porque al no consultarse el colindante es una variación al reglamento. ”

Así las cosas, el 8 de mayo de 2002, ARPE, luego de evaluar los planteamientos de las partes, informó a la recurrida que le había concedido al recurrente un término de 30 días para que “someta los documentos ambientales para realizar una reevaluación del caso, porque ha surgido información donde se establece que se sometió información incorrecta y falsa. Información falsa, por no haber notificado de cuerpos de agua en el lugar y residentes cercanos a la torre e información incorrecta en cuanto a la localización”. Acerca de esta orden, el recurrente alega que la misma no le fue notificada.
La vista en su fondo ante ARPE en el caso de epígrafe, fue pautada para el 18 de diciembre de 2002. Según surge de la transcripción de la vista, la misma no se vio en su fondo, ya que las partes estipularon varios aspectos, que serían considerados por el oficial examinador, en una etapa posterior, antes de que ARPE tomase su decisión final.
Luego de varios incidentes procesales, ARPE emitió la resolución recurrida el 18 de agosto de 2006, cerca de cuatro años después de la primera comparecencia en dicha agencia. Mediante la misma revocó el permiso expedido el 12 de julio de 2001. Posteriormente, el recurrente presentó una. Moción de Reconsideración la cual no fue atendida por ARPE.
Inconforme ante esta determinación, el recurrente acude ante nos señalando que ARPE cometió los siguientes errores:

*1138
“PRIMERO: Erró ARPE al revocar el Permiso de Construcción sin la previa celebración de una vista adjudicativa, en contravención con lo dispuesto en la LPAUy el Reglamento de Procedimientos Adjudicativos y, por ende, en violación al debido proceso de ley al que tiene derecho la Parte Recurrente.

SEGUNDO: Erró ARPE al basar su Resolución en un documento alegadamente emitido por el DRNA [Departamento de Recursos Naturales y Ambientales], el cual no obra en el expediente administrativo del caso y al cual la Parte Recurrente no tuvo acceso ni oportunidad de refutarlo.

TERCERO: Erró ARPE al no notificar a la Parte Recurrente su Orden de 8 de mayo de 2002, mediante la cual ordenaba la preparación de un documento ambiental corregido, ello en violación a su debido proceso de ley y alo dispuesto en el Reglamento de Procedimientos Adjudicativos de ARPE. ”

II
Por estar íntimamente relacionados entre sí y al referirse a derechos procesales otorgados en ley para los procedimientos administrativos, pasamos a discutir conjuntamente los tres errores señalados por el recurrente.
La Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. see. 2101 et seq., en su sección 4.5, establece el alcance de la revisión judicial de una decisión administrativa. Se circunscribe a lo siguiente:

“El tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio.

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. ”

Al revisar una decisión administrativa, tenemos presente la norma vigente en nuestro ordenamiento jurídico de que los tribunales apelativos den gran deferencia a las decisiones de organismos administrativos cuando las mismas están basadas en interpretaciones dentro del ámbito de especialización de la agencia concernida. Otero Mercado v. Toyota de Puerto Rico, Op. 3 de febrero de 2005, 2005 JTS 13; Rebollo Vda. de Liceaga v. Yiyi Motors, Op. 13 de enero de 2004, 2004 JTS 4; T-JAC v. Caguas Centrum Limited, 148 D.P.R. 70 (1999).
Por lo tanto, como tribunal apelativo, nuestra intervención está limitada a determinar si la actuación administrativa fue razonable y cónsona con el propósito legislativo o si por el contrario fue irrazonable, ilegal o si medió abuso de discreción por lo que la deferencia judicial cede ante una actuación irrazonable o ilegal. T-JAC v. Caguas Centrum Limited, supra; Rivera Rentas v. A & C Development Corp., 144 D.P.R. 450 (1997); Agosto v. Fondo del Seguro del Estado, 132 D.P.R. 866 (1993).
Utilizando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. Evidencia sustancial es aquélla relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Otero Mercado v. Toyota de Puerto Rico, supra; Pacheco Torres v. Estancias de Yauco, 2003 JTS 150; Domínguez Talavera v. Caguas Expressway Motor, Inc., 148 D.P.R. 387 (1999); Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670 (1953).
Por lo anterior, la parte que impugne las determinaciones de la agencia tiene que convencer al tribunal que la evidencia en la cual se apoyó el foro administrativo no es sustancial y que existe otra prueba en el expediente que reduce o menoscaba el valor probatorio de la evidencia impugnada, a fin de que se pueda concluir que la *1139 determinación de la agencia fue irrazonable de acuerdo con la totalidad de la prueba en el expediente. Hilton Hotels v. Junta de Salario Mínimo, supra; Misión Industrial v. Junta de Planificación, 146 D.P.R. 64 (1998); Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc., supra.
Si la parte afectada, en la solicitud de revisión, no demuestra la existencia de esa otra prueba que sostiene que la actuación de la agencia no está basada en evidencia sustancial o que reduzca el valor de la evidencia impugnada, el tribunal respetará las determinaciones de hechos y no debe sustituir el criterio de la agencia por el suyo. Las determinaciones de hechos de organismos y agencias tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas. Domínguez Talavera v. Caguas Expressway Motors, Inc, supra; Ramírez v. Departamento de Salud, 147 D.P.R. 901 (1999); Facultad para las Ciencias Sociales Aplicadas, Inc. v. Consejo de Educación Superior, 133 D.P.R. 521 (1993); Henríquez v. Consejo Educación Superior, 120 D.P.R. 194 (1987).
La deferencia reconocida a la decisión de una agencia administrativa sólo cederá en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial, (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc., supra; Reyes Salcedo v. Policía de Puerto Rico, 143 D.P.R. 85 (1997); T-JAC, Inc. v. Caguas Centrum Limited, supra.
Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. La cuestión es si la determinación de la agencia es razonable y no si la agencia logró la determinación correcta del hecho o los hechos. Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Bogotá, Colombia, 2da. Ed., 2001, pág. 543.
La Sec. 3.1 de la LPAU, supra, dispone que en todo procedimiento adjudicativo ante una agencia, se salvaguardarán los siguientes derechos:

“a) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte;

b) derecho a presentar evidencia;

c) derecho a una adjudicación imparcial;

d) derecho a que la decisión sea basada en el expediente. ”

Para garantizar el objetivo de hallar la verdad y hacer justicia a las partes, tanto la LPAU como su jurisprudencia interpretativa han establecido que al emitirse una resolución la agencia debe salvaguardar el derecho a la concesión de vista previa, oportuna y adecuada notificación, derecho a ser oído, confrontarse con los testigos, presentar prueba oral y escrita en su favor, y la presencia de un adjudicador imparcial. Magriz Rodríguez v. Empresas Nativas, Inc., 143 D.P.R. 63 (1997); Henríquez v. Consejo Educación Superior, 120 D. P.R. 194 (1987); Ortiz Cruz v. Junta Hípica, 101 D.P.R. 791 (1973).
Como mencionáremos anteriormente, es norma establecida en nuestro ordenamiento jurídico que la resolución u orden que emita una agencia tiene que estar basada exclusivamente en el expediente administrativo. Sec. 3.1 LPAU, supra. Es sólo cuando la determinación administrativa se fundamenta en el expediente administrativo que se garantiza el debido proceso de ley en su modalidad procesal. Magriz Rodríguez v. Empresas Nativas, Inc., supra; López y otros v. Asoc. de Taxis de Cayey, 142 D.P.R. 109 113 (1996).
*1140 Ill
En el caso de autos, ARPE no le brindó al recurrente las garantías procesales que tienen los ciudadanos en un proceso adjudicativo a tenor con la LPAU.
Según surge del expediente, en este caso únicamente se llevó a cabo una conferencia con antelación a la vista. El oficial examinador no celebró una vista adjudicativa en su fondo previo a resolver la controversia. La conferencia con antelación a la vista, celebrada el 18 de diciembre de 2002, únicamente se limitó a discutir varios planteamientos de derecho del recurrente y aclarar ciertas dudas a la recurrida. El recurrente no tuvo oportunidad de presentar evidencia a su favor ni refutar evidencia presentada por la recurrida.
Surge de la transcripción de la conferencia con antelación a la vista, expresiones del propio oficial examinador, las cuales confirman que esta vista no fue una adjudicativa en su totalidad. Expresó el oficial examinador justo antes de concluir los procedimientos: 

“Creo que nos estamos yendo en el día de hoy con, por lo menos, el inicio de un pacto que puede ser justo para ambas partes, por lo menos en la cuestión de, de [sic] minimizar las controversias. Si vamos a ver la vista, la vamos a ver completamente en su fondo y, fíjese que aquí no se está determinando nada, aquí no se ha visto nada realmente. En el día de la vista ahí es que todo el mundo tiene que sentarse aquí, los testigos de ambas partes pueden ser contrainterrogados y etcétera, etcétera. En este momento no, lo que estamos aquí era, esto era más bien una reunión para establecer unos puntos de partida... ”.

Es menester señalar que la resolución de ARPE fue emitida cerca de cuatro años luego de haberse celebrado esta conferencia con antelación a la vista. Esta actuación nos lleva a concluir que el recurrente no tuvo oportunidad de tener una vista adjudicativa tal y como es provista por la LPAU.
En igual error incurrió ARPE al considerar un documento que no constaba en el expediente administrativo. No se nos ha provisto el alegado documento emitido por el Departamento de Recursos Naturales y Ambientales (DRNA), como parte del expediente de revisión administrativa. El documento suscrito por el DRNA no fue presentado en la conferencia con antelación a la vista celebrada el 18 de diciembre de 2002. Surge de la resolución recurrida, [3] que este documento forma gran parte de las determinaciones de hechos las cuales llevaron a ARPE a tomar su decisión.
La escueta discusión del recurrente acerca del segundo error, nos lleva a concluir que el recurrente no tuvo acceso al documento emitido por el DRNA y, por consiguiente, entendemos que el error señalado fue cometido.
Por último, no surge del expediente de revisión que el recurrente haya sido notificado acerca de la orden del 8 de mayo de 2002. Al ocurrir esto, se le violó el debido proceso de ley al recurrente, ya que la notificación es una garantía procesal provista en la LPAU en todo procedimiento adjudicativo.
IV
En mérito de lo antes expresado, se revoca la resolución recurrida y se devuelve el caso de epígrafe a ARPE para que continúe con los procedimientos, proveyéndole al recurrente una vista adjudicativa en su fondo que cumpla con las garantías procesales establecidas en la LPAU.
Lo acordó el Tribunal y lo certifica la señora Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
*1141 ESCOLIOS 2007 DTA 57
1. Véase Apéndice pág. 37.
2. Véase pág. 160 del Apéndice.
3. Véase pág. 198 del Apéndice.