Cortés Trigo, Juez Ponente
*861 TEXTO COMPLETO DE LA SENTENCIA
Se recurre de una Resolución de la Autoridad de Energía Eléctrica (AEE) dictada el 21 de noviembre de 2007, notificada el mismo día (Resolución). Revocamos.
I
El 8 de junio de 2007, la AEE preparó una invitación a subasta para la adquisición de válvulas de alta temperatura y alta presión para las Centrales Termoeléctricas, Unidades de Hidro-Gas y Cambalache, mediante un contrato a requerimiento. La subasta fue identificada como Q-025662. La subasta incluía cotizaciones de materiales para veinte (20) renglones y las propuestas de los licitadores debían ser entregadas el 26 de junio de 2007 alas 9:00 a.m.
El 17 de julio de 2007, el Comité de Subastas de la AEE (Comité) declaró desierta la invitación a subasta al *862 determinar que las propuestas sometidas resultaban onerosas para la AEE. El Comité emitió una segunda invitación titulada como “Apéndice No. 7”, pero mantuvo el mismo número de identificación de subasta y las mismas especificaciones técnicas, términos y condiciones. Las propuestas de los licitadores debían ser sometidas el 14 de agosto de 2007 a las 9:00 A.M.
La apertura de la subasta se llevó a cabo el 14 de agosto de 2007 con la participación de ocho licitadores: Global Engineering Group, Inc. (Global); Indusa Industrial Supplies, Inc. (Indusa o recurrente); Servimetal, Inc.; Engineering Parts & Services, Inc.; Industrial Fab & Supply; Ferguson Cesco, Inc.; Sun Energy Sales & Services, Inc.; y M.R. Franceschini, Inc.
Las propuestas presentadas por los ocho licitadores fueron analizadas por la División de Suministros-Subdivisión Almacenes de la AEE, y ésta llegó a las siguientes conclusiones:

“Síntesis de las propuestas y defectos o desviaciones de las especificaciones, términos y condiciones:

Industrial Fab & Supply - Se rechaza de plano la oferta de esta compañía porque no presentó la fianza licitación mandataria para esta subasta.

Engineering Parts & Services, Inc. - Esta compañía mantiene fianza de licitación anual vigente al momento de la apertura. Sus términos de pago son netos a 30 días. Ofrece entregas variadas para los renglones cotizados. Su oferta cumple con las especificaciones técnicas, términos y condiciones y no hace excepciones.

Global Engineering, Inc. - Esta compañía mantiene fianza de licitación anual vigente al momento de la apertura. Sus términos de pago son netos a 30 días. Ofrece entrega según requerido. Su oferta cumple con las especificaciones técnicas, términos y condiciones y no hace excepciones.
Sun Energy Sales & Services, Inc. - Esta compañía mantiene fianza de licitación anual vigente al momento de la apertura. Sus términos de pago son netos a 30 días. Cotizó los renglones 1 al 5, 7, 9, 10 y 20. Ofrece entregas variadas para los renglones cotizados. Su oferta cumple con las especificaciones técnicas, términos y condiciones y no hace excepciones.

Indusa Industrial Supply, Inc. - Esta compañía presentó fianza de licitación individual por el 10% del precio cotizado. Sus términos de pago son netos a 30 días. Ofrece entrega de 16 a 20 semanas. Su oferta cumple con las especificaciones técnicas, términos y condiciones y no hace excepciones.

Servimetal, Inc. - Esta compañía mantiene fianza de licitación anual vigente al momento de la apertura. Sus términos de pago son netos a 30 días. Ofrece entrega según requerido. Ofrece una oferta alterna para los renglones del 11 al 19. Solicitó acogerse al beneficio de preferencia otorgado por la Junta para la Inversión en la Industria Puertorriqueña, el cual se aplicó. Su oferta cumple con las especificaciones técnicas, términos y condiciones y no hace excepciones.

MR Franceschini, Inc. - Esta compañía mantiene fianza de licitación anual vigente al momento de la apertura. Sus términos de pago son netos a 30 días. Cotizó los renglones 11 al 19. Ofrece entregas variadas para los renglones cotizados. Su oferta cumple con las especificaciones técnicas, términos y condiciones y no hace excepciones.

Ferguson Cesco, Inc. - Esta compañía mantiene fianza de licitación anual vigente al momento de la apertura. Sus términos de pago son netos a 30 días. Ofrece entrega de 4 a 8 semanas. Su propuesta incluye los arbitrios. Su oferta cumple con las especificaciones técnicas, términos y condiciones y no hace excepciones. ”

*863 El 17 de octubre de 2007, la AEE adjudicó la subasta por renglones a los siguientes licitadores como los postores más bajos evaluados que cumplían con las especificaciones, términos y condiciones de la subasta:

“Renglón 1 a Global, a un costo de $34,480.50;

Renglones 2 y 4 a Indusa, a un costo de $277,568.70;

Renglones 3, 5, 9 y 10 a Sun Energy & Services, Inc. a un costo de $148,830.75;

Renglones 6 y 20 a Engineering Parts & Services, Inc., a un costo de $11,929;

Renglones 7 y 8 a Ferguson Cesco, Inc., a un costo de $9,166;

Renglones 11 al 19 a MR Franceschini, Inc. a un costo de $70,541.35. ”

Cada licitador fue notificado de la adjudicación de la subasta. El costo total de la subasta ascendió a $552,516.30.
El 26 de octubre de 2007, Global presentó una moción de reconsideración de la adjudicación de la subasta. El mismo día, Indusa también presentó una moción de reconsideración solicitando la revisión de los renglones 7 al 20 de la subasta y que éstos se le adjudicaran. Alegó, en síntesis, que los licitadores escogidos ofrecieron bienes que no cumplían con las especificaciones técnicas de la subasta. En su escrito, Indusa discutió detalladamente cada renglón que cuestionó, incluyendo las razones por las cuales entendía que los productos escogidos no cumplían con lo requerido por la AEE. Además, Indusa se opuso a la solicitud de reconsideración de Global.
Ambas mociones de reconsideración fueron atendidas en conjunto y consolidadas, ya que el Juez Administrativo de la AEE consideró que las mismas estaban estrechamente relacionadas. El 21 de noviembre de 2007, el Juez Administrativo emitió la Resolución denegando ambas solicitudes de reconsideración al concluir que la subasta fue adjudicada de conformidad con el Reglamento de Subastas de la AEE, Reglamento Núm. 6646 del 25 de junio de 2003 (Reglamento) al adjudicarse ésta a favor del postor más bajo evaluado cuya oferta responda sustancialmente a las especificaciones, términos y condiciones establecidos en la invitación a la subasta. Sin embargo, en la Resolución sólo expresó “que a la luz de la evaluación integral del récord, existe evidencia sustancial para sostener la decisión”. No discutió ni resolvió expresamente lo planteado por la recurrente en su moción de reconsideración a los efectos de que los licitadores favorecidos cotizaron productos que no cumplían con las especificaciones técnicas establecidas en la subasta y eran de inferior calidad.
Inconforme, Indusa recurrió ante nos. Alega que se cometió el siguiente error:

“Erró la AEE al adjudicar la Subasta Número Q-025662 a favor de ciertos licitadores cuyas propuestas incluyeron productos y materiales que no cumplen sustancialmente con las especificaciones, términos y condiciones requeridos en la misma, siendo de inferior calidad y no apto para la necesidad de la AEE, poniendo en riesgo la seguridad pública y concediendo así una ventaja indebida a estos licitadores agraciados sobre Indusa en violación al principio de libre competencia en igualdad de condiciones que rige una subasta en el sector público. ”

Conjuntamente, la recurrente presentó Moción Urgente en Auxilio de Jurisdicción en la que se solicitó la paralización del otorgamiento de los contratos a las empresas favorecidas en los Reglones 1, 3 y 5 al 20 de la Subasta en cuestión, hasta tanto se adjudicara el recurso de epígrafe.
*864 La AEE compareció en oposición al recurso de revisión. Revocamos.
II
El propósito de exigir que las obras y la contratación que realiza el Gobierno se efectúen mediante el proceso de subasta es proteger los intereses y dineros del Pueblo. Este mecanismo sirve para promover la competencia, lograr los precios más bajos posibles, evita el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos y minimiza los riesgos de incumplimiento. Cordero v. Municipio de Guánica, 170 D.P.R. _ (2007), 2007 J.T.S. 29, a la pág. 862; A.E. E. v. Maxon Eng. Servs., Inc., 163 D.P.R. _ (2004), 2004 J.T.S. 199, a las págs. 489-490; Mar-Mol Co., Inc. v. Adm. Servicios Gens., 126 D.P.R. 864, 871 (1990).
Los procesos de subasta llevados a cabo por el gobierno central y sus agencias están regidos por la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada (LPAU), 3 L.P.R.A. sees. 2101 y ss. Estos procesos son informales. Sec. 3.19 de la LPAU, 3 L.P.R.A. see. 2169; Rafael Rosario & Assoc, v. Depto. Familia, 157 D.P.R. 306, 328-329 (2002).
Cada agencia, como entidad con el conocimiento especializado, tiene discreción para aprobar un reglamento que establezca el procedimiento y las guías a seguir en sus subastas. L.P.C. & D., Inc. v. A.C., 149 D.P.R. 869, 875 (1999).
De conformidad con lo antes indicado, la AEE aprobó el Reglamento para establecer las normas para el trámite, celebración y adjudicación de sus subastas. En el Artículo A (1) de la Sección 9 del Capítulo II del Reglamento se dispone que “[l]a subasta se adjudica a favor del postor más bajo evaluado cuya oferta . responda sustancialmente a las especificaciones, términos y condiciones establecidas en la Invitación a la Subasta en casos de adquisición de bienes o servicios.” El postor más bajo evaluado es el “[Ijicitador respondiente cuya oferta es la mejor que cumple sustancialmente con los términos y condiciones y con las especificaciones de la invitación a subasta. ” Art. D (33) de la Sec. 1 del Cápitulo I del Reglamento.
En el Artículo A (2) de la Sección 9 del Capítulo II del Reglamento se establece que “[ajntes de adjudicar una subasta de adquisición de bienes y servicios a favor de uno o varios licitadores, se consideran, entre otros, los siguientes factores: cumplimiento con las especificaciones; habilidad del licitador para suplir los bienes o servicios requeridos en la subasta bajo consideración; la calidad de los materiales, equipo de servicios ofrecidos y su adaptabilidad a las especificaciones establecidas por.: la Autoridad; la responsabilidad económica del licitador; su pericia, experiencia e integridad comercial. La Autoridad establece los criterios para evaluar el tiempo y lugar de entrega, cumplimiento con los requisitos de fianza de licitación y términos de pago. ”
La LPAU también establece un procedimiento detallado para solicitar reconsideración y revisión de la adjudicación de las subastas por las agencias gubernamentales. Secs. 3.19 y 4.2 de la LPAU, 3 L.P.R.A. sees. 2169 y 2172. Estos trámites posteriores son formales. Cotto v. Depto. de Educación, 138 D.P.R. 658, 663-664 (1995). Conllevan requisitos rigurosos de notificación y exposición de los fundamentos de la actuación administrativa, de manera que las partes puedan ejercitar su derecho a la revisión judicial. RBR Const., S.E. v. A.C., 149 D.P.R. 836, 854-855 (2000).
La resolución que emita la agencia en estos casos debe contener, cuando menos, la siguiente información: los nombres de los licitadores en la subasta y una síntesis de sus propuestas; los factores o criterios que se tomaron en cuenta para adjudicar la subasta; los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos y la disponibilidad y el plazo para solicitar reconsideración o revisión. L.P.C. & D., Inc. v. A.C., 149 D.P.R. 869, 879 (1999).
*865 Lo anterior es consistente con los requisitos generalmente aplicables a todo procedimiento administrativo de naturaleza adjudicativa en nuestra jurisdicción. El Tribunal Supremo ha reconocido que en estos casos los tribunales deben asegurarse que las actuaciones de las agencias se mantengan dentro del ámbito de la autoridad que les ha sido delegada a éstas por la Asamblea Legislativa. Assoc. Ins. Agencies v. Com. Seg. P.R., 144 D.P.R. 425, 435 (1997).Véase, además, Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 130 (1998).
Las partes en este tipo de procedimientos gozan, entre otros, del derecho a que la decisión esté basada en el expediente administrativo y sea tomada por- un adjudicador imparcial. Sec. 3.1 de la LPAU, 3 L.P.R.A. see. 2151; Magriz v. Empresas Nativas, 143 D.P.R. 63, 70 (1997). Es ilícito adjudicar una controversia a la luz de evidencia secreta que no ha sido notificada a las partes ni se ha brindado oportunidad de rebatirla. Torres Ramos v. Policía de P.R., 143 D.P.R. 783, 796 (1997).
Las agencias administrativas vienen obligadas a expresar claramente sus determinaciones de hechos y las razones para sus decisiones. La resolución de la agencia debe reflejar que el foro administrativo ha considerado y ha resuelto los conflictos de prueba. Se deben discutir tanto los hechos probados como los que fueron rechazados. La decisión no puede ser pro forma, y debe reflejar que la agencia ha cumplido con su obligación de evaluar y resolver los conflictos de prueba. Mun. de San Juan v. J.C.A., 152 D.P.R. 673,707-708 (2000).
La Sección 3.14 de la LPAU, 3 L.P.R.A. see. 2164, en este sentido, requiere que cualquier orden o resolución final emitida por una agencia en un procedimiento de naturaleza adjudicativa incluya y exponga “separadamente determinaciones de hechos si éstas no se han renunciado [y] conclusiones de derecho, que fundamentan la adjudicación.” Entre otros propósitos perseguidos por este requisito, se incluye: “(1) proporcionar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esta tarea; (2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; (3) ayudar a la parte afectada a entender porqué el organismo administrativo decidió como lo hizo, y, al estar mejor informada, poder decidir si acude al foro judicial o acata la determinación; (4) promover la uniformidad intraagencial, en particular, en cuanto el proceso decisorio institucional es adoptado por distintos miembros de un comité especial a quienes les está encomendado celebrar vistas y recibir prueba; (5) evitar que los tribunales se apropien de funciones que corresponden propiamente a las agencias administrativas bajo el concepto de especialización y destreza. ” Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 280-281 (1999).
Se trata de un requisito del debido procedimiento de.ley. Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265, 274 (1987). Este requisito se extiende a procedimientos de naturaleza informal, Mun. de San Juan v. J.C. A., 149 D.P.R. _, a las págs. 280-281, incluyendo subastas adjudicadas por las agencias administrativas, L.P. C. & D., Inc. v. A.C., 149 D.P.R. _, a las págs. 877-878.
III
Primeramente, es necesario aclarar que la recurrente no cuestionó los reglones 1, 3 y 5 ante la AEE. El Tribunal Supremo de Puerto Rico ha resuelto que un recurrente no puede levantar por primera vez en alzada ante un tribunal un reparo que afecta una decisión administrativa cuando dicho reparo no fue señalado ante la agencia gubernamental, organismo al cual le correspondía resolver en primera instancia con vista a la prueba. Garaje Rubén, Inc. v. Tribunal Superior, 101 D.P.R. 236, 242 (1973). Por lo tanto, sólo consideraremos lo que plantea en cuanto a los reglones 7 al 20.
En su recurso, la recurrente alega que las propuestas de los lidiadores favorecidos en los renglones 7 al 20 no cumplían con las especificaciones de la subasta porque cotizaron válvulas distintas e inferiores a las especificadas por la AEE, por lo que debíamos revocar tales adjudicaciones. En los renglones 7, 8, 9 y 10, la AEE solicitó válvulas clase 2700 y se adjudicó a propuestas de válvulas clase 2680. En los renglones 11 al 19, la AEE solicitó válvulas clase 900 y adjudicó a cotizaciones de válvulas clase 800, y en el renglón 20 solicitó *866 una válvula de cuña clase 3100 y adjudicó a una válvula de globo clase 2680. Estas diferencias no sólo son en cuanto a la clase de las válvulas, sino también las válvulas inferiores favorecidas son más baratas que las cotizadas por Indusa.
En su alegato, la AEE se limita a argumentar que adjudicó la subasta a licitadores cuyas ofertas eran las más bajas y cumplieron con las especificaciones, términos y condiciones de la invitación a subasta conforme el análisis de las cotizaciones ofrecidas por su División de Suministros - Subdivisión de Almacenes. No discute, específicamente, los señalamientos de la recurrente sobre las diferencias en las especificaciones de las válvulas.
En la situación de autos, la notificación de la adjudicación de la subasta y la Resolución no exponen fundamentos que nos permitan conocer porqué la propuesta de Indusa en los renglones en controversia no fue acogida por la AEE y las razones para favorecer las otras propuestas. No existe determinación específica formulada por la AEE en torno a que las propuestas de los otros licitadores cumplían con las especificaciones de la subasta. La AEE, tanto en la adjudicación de la subasta como en la Resolución, se limitó a aseverar que las propuestas favorecidas cumplían con las especificaciones técnicas, términos y condiciones de la subasta, y eran las más bajas. La AEE no intentó justificar dichas aseveraciones conclusorias.
En su comparecencia, la AEE intenta subsanar las deficiencias de la decisión administrativa argumentando que las propuestas favorecidas cumplían sustancialmente con las especificaciones. La AEE, según hemos indicado, no incluyó determinación específica en torno a este particular.
Los tribunales pueden rechazar una decisión administrativa cuando la misma no está apoyada en el récord de un caso o resulta irrazonable. RBR Const., S.E. v. A.C., 149 D.P.R. _, a las págs. 856-857. Si bien las decisiones administrativas, de ordinario, merecen deferencia por parte de los tribunales, no debe avalarse una decisión que resulta claramente errónea. A.E.E. v. Maxon Eng. Servs., Inc., 2004 J.T.S. 199, a las págs. 491-492; A.A.A. v. Unión Abo. A.A.A., 158 D.P.R. 273, 290-291 (2002).
En el presente caso, la adjudicación realizada por la AEE resulta contraria al récord, el que refleja que Indusa fue el postor que ofreció las válvulas requeridas en la subasta. Tampoco cumplió la AEE con la obligación que le impone la ley de justificar su decisión. En estas circunstancias, consideramos que debe revocarse la adjudicación impugnada y, en su lugar, adjudicar los renglones cuestionados de la subasta a Indusa.
IV
Por los fundamentos expresados, se revoca la resolución recurrida. En su lugar, se dicta sentencia ordenando a la AEE adjudicar los renglones 7 al 20 de la subasta en controversia a la recurrente.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Leda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones